IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

JOSEF ZVERINA, )
        Plaintiff )
        v. ) No. 3:05-cv-221
TRW FUJI VALVE, INC., )
        Defendant )

## MEMORANDUM OPINION

This is a *pro se* action brought for age discrimination. Although the complaint does not provide any specific causes of action, the court assumes that plaintiff attempts to bring the claim under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq.*, and the Tennessee Human Rights Act (THRA), T.C.A. § 4-21-201, *et seq.* Currently pending is the defendant's motion for summary judgment [Court File #13]. For the reasons that follow, that motion will be granted and this action dismissed.

## I.

### *Plaintiff's Allegations of Age Discrimination*

Plaintiff was hired as a maintenance technician on September 14, 1994, to work at defendant's Sevierville, Tennessee, plant. At the time, plaintiff was 58 years old. Plaintiff's complaints are best summarized in a letter he submitted to the court in response to defendant's motion for summary judgment. Plaintiff complains as follows:

> I was never late, never missed a day of work, never refused any work nor overtime. When I reached the age of 65, TRW couldn't find any reason to get rid of me. I was in great shape mentally and physically. So they came up with a scheme to write me up. Two supervisors started to ask me when I will retire. When I told them that I want to work eight more years, they started to write me up at will. See all the exhibits. They didn't ask any witnesses, put in my file and Human Resources never investigated. They didn't follow Employee Handbook. They didn't write up young people for the same incidents.

Court File #16. Plaintiff alleges that the defendant ultimately terminated his employment because of his age and used the multiple "write-ups" as the purported justification. Plaintiff also contends that he was denied training because of his age and that this training was provided to younger individuals who worked for TRW. Plaintiff has not provided any admissible evidentiary material in response to the motion for summary judgment.

2

## II.

### *Factual Background*

The following factual background is based on evidentiary materials submitted by the defendant which includes portions of an arbitration transcript and plaintiff's deposition testimony. This evidentiary material is considered in the light most favorable to the plaintiff.

TRW hired the plaintiff as a maintenance technician at its Sevierville, Tennessee, plant on September 14, 1994. At the time, plaintiff was approximately 58 years old. The Sevierville facility employs 300 individuals and manufactures engine valves for passenger cars and trucks. TRW terminated plaintiff's employment on February 6, 2004, ostensibly because of his substantial record of serious safety violations.

It is undisputed that the essential function of the maintenance technician position, according to the official job description, is "strict adherence to all safety, quality, and OSHA compliance issues, such as electrical, lock-out, welding and equipment operation, etc." In addition, the facility's employee handbook provides that all employees are responsible for learning the hazards in their work areas.

3

Plaintiff signed a form acknowledging that he had received and read the handbook on May 11, 1998.

On plaintiff's September 19, 1996 performance evaluation, his supervisor, Ray Carter, rated plaintiff as "needs improvement" in the performance category of safety. Specifically, plaintiff was advised of the need to "keep glasses on at all times and side shields in place." Plaintiff admitted in his deposition that Mr. Carter did not discriminate against him on the basis of his age. On a September 19, 1997 performance evaluation issued by plaintiff's supervisor, Carroll Chance, plaintiff against received a "needs improvement" rating for safety. The evaluation specifically noted that "Joe needs to use more care in work habits."

On his March 14, 2001 performance evaluation issued by plaintiff's supervisor, Jon Underwood, plaintiff again received a "needs improvement" rating under the "safety sense" category with a note adding that he "needs to always use earplugs on the shop floor" and "always use LOTO (lock-out/tag-out) procedure." On his performance evaluation for the period ending April 2002, plaintiff again received "below expectations" in the category of safety.

TRW employs a progressive discipline policy entitled "Corrective Counseling." The purpose of the policy is to identify and correct behavior that is

detrimental to an employee's working career at TRW. In most situations, the counseling procedure begins at the first stage. TRW reserves the right to begin the process at any stage and to skip stages depending upon the seriousness of the issue. At the first stage, a supervisor informs the employee of the problem and issues a written report. The employee is given the opportunity to add comments to the report. If the problem is not corrected, the next step is typically second stage corrective counseling, while another written report is issued and the employee has the opportunity to add comments. If the problem is not corrected, the next step is decision-making leave. During this paid leave, the employee must decide whether he can adapt to the job requirements and correct the behavior. During decision-making leave, the employee's supervisor, the department manager, and Human Resources decide whether the employee should continue working at the plant.

On December 20, 1996, plaintiff suffered a cut to his right thumb. He did not report this injury until January 2, 1997. As a result, the thumb became so seriously infected that plaintiff had to miss work to receive intravenous medication. At the time of this incident, Ray Carter, plaintiff's supervisor, noted on the accident report that he discussed with plaintiff "the use of cotton gloves when in potentially hazardous area (sharp edges). We also discussed thoroughly cleaning cuts when they happen and also reporting such accidents to a supervisor immediately."

5

On December 10, 1997, plaintiff's supervisor, Mr. Chance, issued plaintiff a first stage corrective counseling report for unsafely leaving a piece of aluminum with sharp pointed edges on an industrial grinder. It is undisputed that this incident occurred and plaintiff was reprimanded for it.

On March 29, 2001, plaintiff received another first stage corrective counseling report from Mr. Chance for cutting his thumb as a result of unsafe work practices. Plaintiff was grinding a piece of metal and, because he did not use pliers to hold the piece of metal in place as required by TRW procedure, the grinding wheel cut and ground skin off plaintiff's thumb. Plaintiff signed this corrective counseling without any comments and acknowledged in his deposition that he was indeed not using pliers to grind the object in question.

On April 19, 2001, TRW placed plaintiff in stage two corrective counseling for an incident that occurred on the previous day, when Mr. Chance observed the plaintiff approximately 20 feet off the floor in a manual lift without wearing the required five-point safety harness. Plaintiff acknowledged at the administrative hearing that he was in fact elevated from the ground without the required harness, but distinguishes his actions on the basis that he was on a ladder rather than a "manlift."

On May 21, 2002, TRW again placed plaintiff in two stage corrective counseling, this time for failing to report another injury to his finger. Although plaintiff has contested the accuracy of the report, plaintiff acknowledges signing the accident investigation report, which indicates that the injury occurred on April 29, 2002, but was not reported until May 9, 2002. As a result of this particular incident, a "one point lesson" about the prompt reporting of work-related injuries was given to all employees of the Maintenance Department.

On August 15, 2003, after plaintiff returned from yet another workplace injury, Amy Brooks, TRW's Human Resources manager, prepared a summary of expectations for plaintiff and met with him to discuss it. The expectations were designed to remind plaintiff of safety procedures and introduce him to the new sturdier gloves that TRW had obtained for him to use to insure his safety.

Three days after this meeting, Jon Underwood and Jim Ford, TRW's safety representative, issued a "near miss report," indicating that plaintiff received a shock while attempting to put a fuse in by hand instead of using a fuse puller. Although plaintiff contests that he committed any safety infraction in this instance, he admits to touching the machine "accidentally" with his finger and feeling a "tingle" as a result.

7

Shortly thereafter, on September 5, 2003, plaintiff was placed in stage two corrective counseling for the third time in little more than two years for failing to wear the specially approved gloves that had been discussed with him on August 15, 2003. Although plaintiff now claims that he was wearing the protective gloves underneath his standard cotton gloves, on the contemporaneous report plaintiff does not deny that he failed to wear the protective gloves, stating only that he "was not working at that moment."

On November 5, 2003, plaintiff was issued another "near miss report" for welding without a mask. The report recommended a discussion with plaintiff about the importance of wearing personal protective equipment when welding.

Between August 2003 and the date of his discharge in February 2004, Bill Wantz, TRW's operations manager, had at least four conversations with plaintiff about his continued trend of unsafe work practices, TRW's emphasis on safety, and the fact that all employees were expected to follow the safety rules and procedures.

On January 19, 2004, TRW's safety representative observed that plaintiff had locked his tool box with a lock-out/tag-out (LOTO) lock in violation of OSHA regulations and prepared an incident report. Plaintiff had recently received

8

training on proper LOTO procedures. The matter was raised to Mr. Wantz and Ms. Brooks, and TRW placed plaintiff on decision-making leave on February 1, 2004.

During this leave, Mr. Wantz met with Mr. Underwood, Mr. Ford and Ms. Brooks to discuss plaintiff's safety record. Mr. Wantz decided to terminate plaintiff's employment because, given plaintiff's substantial record of safety violations and disregard for plant safety, Mr. Wantz did not want to risk plaintiff injuring himself or his co-workers. Plaintiff's age was never mentioned during any of these discussions and Mr. Wantz contends that he did not consider plaintiff's age in deciding to terminate him. On February 4, 2004, TRW terminated plaintiff's employment for the stated reason of his substantial record of serious safety violations.

In his deposition and at the administrative hearing, plaintiff stated generally that "younger employees" were not reprimanded for safety infractions when he was. Further, he claimed that he was denied opportunities to receive training which was made available to younger employees. However, the alleged unavailability of such training did not adversely affect his eligibility for promotions or raises. In addition, plaintiff claimed that TRW supervisors questioned him on separate occasions about when he was going to retire. Specifically, plaintiff stated that Carroll Chance talked to him about retirement on three separate occasions. Plaintiff also stated that Jon Underwood, once he became plaintiff's supervisor, also

9

asked him three times when he was going to retire. Plaintiff testified that he was never called to either person's office for that purpose, but that the questions came up when he and Underwood "were working together."

III.

### *Summary Judgment Standards*

Pursuant to Rule 56, summary judgment shall be rendered when requested if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. It is the burden of the party seeking summary judgment to show the court that, under uncontradicted facts, the moving party is entitled to judgment as a matter of law. Summary judgment is intended to provide a quick, inexpensive means of resolving issues as to which there is no dispute regarding the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). In assessing the validity of a summary judgment motion, the court views the pleadings, depositions, answers to interrogatories, admissions, and competent affidavits in a light most favorable to the opponent of the motion. However, an opponent to a motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue

10

for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an essential element of that party's case, and on which the party will bear the burden of proof at trial. *Catrett*, 477 U.S. at 322.

In response to the motion for summary judgment, the plaintiff must offer admissible evidence sufficient to create a genuine disputed material fact. *See* Rule 56(e), Federal Rules of Civil Procedure; *Allen v. Michigan Dept. of Corrections*, 165 F.3d 405, 413 (6th Cir. 1999) (conclusory allegations insufficient to establish a prima facie case of intentional discrimination).

IV.

### *Claims Under the ADEA*

To establish an age discrimination claim under either the ADEA or the THRA, plaintiff bears the burden of proving by a preponderance of the evidence that age was a determining factor in an adverse employment action taken against him. *Roush v. KFC National Management Co.*, 10 F.3d 392, 396 (6th Cir. 1993).

11

Generally, a plaintiff may establish discrimination by offering either direct or circumstantial evidence of age discrimination. *Kline v. TVA*, 128 F.3d 337, 348 (6th Cir. 1997).

Direct evidence of discrimination is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Products Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). Isolated or ambiguous comments that are susceptible to multiple connotations do not constitute direct evidence of discrimination. *See Gagne v. Northwestern National Ins. Co.*, 881 F.2d 309 (6th Cir. 1989). Plaintiff may also establish a case of discrimination based on circumstantial evidence.

To establish a prima facie case of age discrimination, a plaintiff must prove: (1) that he was at least 40 years old at the time of the alleged discrimination; (2) that he was subjected to an adverse employment action; (3) that he was otherwise qualified for the position; and (4) that he was replaced by a person outside the protected class. *Kline v. TVA*, 128 F.3d 337, 349 (6th Cir. 1997). In situations where a plaintiff was not replaced, a plaintiff can make out a prima facie case by showing that (1) he was a member of a protected class; and (2) that for the same or similar conduct he was treated differently than similarly-situated non-

minority employees. *Davis v. Monsanto Chem. Co.*, 858 F.2d 345 (6th Cir. 1988), *cert. denied*, 490 U.S. 1110 (1989).

Once plaintiff has met this burden, the burden shifts to the employer to produce evidence of a legitimate, non-discriminatory reason for the contested employment action. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Once this burden has been met, the plaintiff must demonstrate that the employer's proffered reason is a pretext for unlawful discrimination. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000).

V.

*Analysis*

The defendant concedes that the plaintiff is within the protected class of the ADEA and THRA and that his termination constitutes an adverse employment action. However, defendant contends that plaintiff cannot establish a prima facie case because he cannot show that he was qualified for the maintenance technician position, that his reprimands or his alleged lack of training constitute adverse employment actions, or that he was treated unfavorably as compared to substantially younger employees.

13

As noted above, to establish a prima facie case of age discrimination, the plaintiff must show that he was "otherwise qualified for the position." *Bush v. Dictaphone Corp.*, 161 F.3d 363, 368 (6th Cir. 1998). To be considered qualified for a position, "an employee must demonstrate that he or she was meeting the employer's legitimate expectations and was performing to the employer's satisfaction." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1022 (6th Cir. 2000). This court has previously found that an employee's disciplinary record could render him unqualified for the position from which he was discharged. *See Gann v. Chevron Chem. Co.*, 52 F.Supp.2d 834 (E.D. Tenn. 1999). In this case, it is undisputed that plaintiff had a long record of serious safety problems while working for the defendant and that the defendant considered this as rendering the plaintiff unqualified for his position. Plaintiff has presented no evidence to indicate that these safety infractions did not occur, but instead offered only his conclusory excuses for each of the claimed safety infractions. He has presented no admissible evidence upon which a reasonable jury could conclude that he was qualified for the position from which he was terminated.

Plaintiff's allegations that he was reprimanded in situations where others were not and that others received training that he did not receive do not rise to the level of an "adverse employment action." Unless a reprimand is "accompanied by some other action, such as a demotion or salary reduction, it is not an adverse

14

employment action." *Howard v. Board of Education*, 2003 U.S. at LEXUS 13512 (6th Cir. 2003). Plaintiff's claims that he did not receive training in this case did not result in any adverse financial consequences or jeopardize his ability to be promoted. Therefore, no questions of material fact have been raised by the plaintiff with respect to the failure to provide him with training.

With respect to the alleged reprimands which younger employees did not receive, plaintiff has not presented any evidence upon which a jury could conclude that similarly situated younger individuals were treated more favorably than him. To make a comparison with another employee for purposes of a disparate treatment analysis, a "plaintiff must show that he was similarly-situated in all relevant aspects to the comparable worker." *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994). In the disciplinary context, "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, or been subject to the same standard and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992). In this case, plaintiff has offered no specific examples or evidence with regard to other individuals who are in a comparable situation to him that were treated differently. He has only generally alleged that younger individuals were treated more favorably, but has made no

15

attempt to describe the situations in which that occurred with admissible evidence. Accordingly, no reasonable jury could conclude that similarly situated younger individuals were treated differently than the plaintiff.

Even assuming plaintiff could establish a prima facie case of age discrimination, he has presented no evidence upon which he could rebut TRW's legitimate business reason for terminating his employment; that is, the apparent continual disregard for TRW's safety rules and procedures. A plaintiff can establish that an employer's stated reason for an employment decision is actually a pretext for discrimination by showing "that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews* at 1021.

In this case, although plaintiff disputes various aspects of the safety-related discipline that he received, he does not contest that the underlying incidents occurred. Rather, he attempts to explain the incidents away. However, he has presented no evidence upon which a reasonable jury could conclude that these incidents were fabricated by a wide variety of defendant's supervisory employees as a pretext to justify the termination of plaintiff's employment. Without such evidence, no reasonable jury could conclude that the alleged justification for plaintiff's

16

termination of employment, the substantial record of safety violations, was a pretext for illegal discrimination.

## VI.

### *Conclusion*

Under the circumstances, it is clear that plaintiff has failed to present evidence upon which he could make out a prima facie case of age discrimination or that defendant's business justification for terminating him was a pretext for age discrimination. Accordingly, defendant's motion for summary judgment [Court File #13] will be granted and this action dismissed.

Order accordingly.

*s/ James H. Jarvis*
UNITED STATES DISTRICT JUDGE

17